IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REUBEN LEWIS,<br><br>               Petitioner,<br><br>vs.<br><br>CHRISTOPHER MILLER, Superintendent,<br>Great Meadow Correctional Facility,[1]<br><br>               Respondent. | No. 9:11-cv-00819-JKS<br><br>MEMORANDUM DECISION |

       Reuben Lewis, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Lewis is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at the Great Meadow Correctional Facility. Respondent has answered, and Lewis has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

       On August 21, 2007, while confined at the Clinton Correctional Facility, Lewis was charged with attempted aggravated assault on a peace officer and assault on a peace officer after he threw a container filled with hot water at Steven Taylor, a corrections officer, and caused him to fall down seventeen stairs.

       On February 28, 2008, Lewis appeared with his attorney before the county court. The prosecutor stated that the People were extending an offer to Lewis that would require him to

---

       [1]       Christopher Miller, Superintendent, Great Meadow Correctional Facility, is substituted for Harold Graham, Superintendent, Auburn Correctional Facility. FED. R. CIV. P. 25(c).

plead guilty to second-degree assault in full satisfaction of the indictment.  Lewis would be sentenced as a second violent felony offender to a determinate sentence of five years' imprisonment plus five years of post-release supervision, fines, and fees.  The prosecutor stressed that the offer was to the lower of the two charged offenses and was the minimum sentence for a conviction of second-degree assault.  Defense confirmed his understanding of the plea offer and stated that he had relayed it to Lewis on numerous occasions.  Defense counsel stated that Lewis was undecided about whether to accept the offer.

Lewis then informed the court that he and his attorney were "in disagreement" because "[t]here was a matter of motions to be filed."  The court interrupted Lewis, stating, "Before you go there, this isn't a discussion as to what has been done or might be done or could be done.  This is a question of whether the offer that's been made is acceptable to you.  That's a yes or no."  Lewis explained to the court that, before he could make a decision about the offer, he needed to see the medical records of Taylor's injuries.  Lewis further stated that he had asked his attorney to file an omnibus motion to obtain the information and that counsel "doesn't seem to be willing to obtain the information that would help [Lewis] make the best decision."  Defense counsel explained that he had filed a discovery demand and a bill of particulars.  The court acknowledged the filings and indicated that the prosecution had filed a response to the discovery motion.  Lewis reiterated that he had not received any discovery material.  In response, the court stated, "I'm not asking you to plead to something you didn't do.  The question is, did you do it."  The court informed Lewis that "it's never going to get better than five years determinative with a five-year post release . . . unless [he was] acquitted" after trial.

2

The court further informed Lewis that it had reviewed the grand jury minutes and determined that the prosecution had established a prima facie case for the charges in the indictment. The court stated that there would be no need for a suppression hearing because the prosecutor had indicated that he would not introduce at trial Lewis's statements to the police but that Lewis would be entitled to a *Sandoval*[2] and *Ventimiglia*[3] hearing, which would be conducted before trial. When the court asked Lewis what else he wanted done, Lewis replied that he "would like to see some type of medical report that the person was injured and how this person was injured."

At the court's request, the prosecutor stated that he had a copy of Taylor's medical records which he would be willing to provide to defense counsel. The prosecutor further stated, "I do want to point out if this goes to trial and the People win, I'm going to be looking for 15 years prison on the top count as well as seven years prison on the Assault, Second, to run consecutive with each other." The court told defense counsel that he could have a short amount of time to review the medical records with Lewis and announced a brief recess for that purpose.

After the recess, both Lewis and his counsel acknowledged that Lewis had an opportunity to review the medical records. Defense counsel then stated that Lewis wished to avail himself of the plea offer, and Lewis was sworn under oath. While under oath, Lewis told the court that he

---

[2] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (a short-hand reference to the New York procedure under which the trial court determines in advance whether evidence of prior convictions is admissible in the event that the defendant testifies).

[3] *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981) (a short-hand reference to the New York procedure under which the trial court determines in advance whether evidence of uncharged crimes is probative for the purpose of showing, *e.g.*, (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan; or (5) identity, and for determining whether that probative value outweighs the prejudice).

was not under the care of a physician or psychiatrist, was not taking medications of any kind, and knew of no reason why he could not enter a guilty plea. Lewis confirmed his understanding that, by entering a plea, he was giving up his right to remain silent and admitting that he committed the crime. He further informed the court that no one had promised him anything or threatened him to get him to enter a plea. Lewis acknowledged that he understood that he was giving up his rights to a jury trial, to have the prosecution prove each and every element of the crimes charged, and to cross-examine or present witnesses. He acknowledged his understanding that his guilty plea was "the same as if [he] had been convicted after trial." Lewis also said that he understood that he was waiving his right to make motions directed at evidence that the prosecutor intended to use against him at trial. The court explained to Lewis that, as part of his plea, Lewis would waive his right to appeal as well as his right to bring motions pursuant to New York Criminal Procedure Law ("CPL") § 440. Lewis stated that he understood.

Lewis then acknowledged that he was willing to enter a plea to second-degree assault in satisfaction of the indictment. Lewis admitted that he had assaulted an individual on or about February 9, 2007, and he entered the guilty plea. The court then "accept[ed] the plea as having been knowingly, intelligently and voluntarily made."

On June 17, 2008, Lewis again appeared in court with his attorney for sentencing. Defense counsel told the court that, when the parties agreed that Lewis would be sentenced to a five-year prison term on a guilty plea to second-degree assault, it was with the understanding that Lewis would be sentenced as a second violent felony offender. However, after Lewis entered his plea, the prosecution served the defense with a statement of a predicate felony conviction. Counsel argued that if Lewis was sentenced as a non-violent second felony offender, the

minimum prison sentence available to him was three years. The court noted that the statement of a predicate felony conviction indicated that Lewis had been convicted of attempted first-degree rape and two counts of first-degree sexual assault. The court and the prosecutor agreed that those crimes were violent felonies. Defense counsel additionally noted that the prior convictions were being appealed but acknowledged that the appeal had no bearing on the sentence in the instant case. Defense counsel then informed the court that Lewis wished to go along with the negotiated sentence.

Lewis then addressed the court, complaining that no motions had been filed in his case and that, although he had reviewed the medical report, he had not seen evidence concerning the manner in which Taylor was injured. After the court asked Lewis if he wished to withdraw his plea, Lewis replied, "no, that's not what I want to do, Your Honor. I don't want to withdraw the plea." The court told Lewis:

> I think the facts were laid out sufficiently and I think you evaluated what your risks were in proceeding to trial and so that you made a judgment call. And whether you feel you did it or you didn't do it, you felt that your risk in getting convicted was too great and that you would have ended up with a worse sentence had you gone to trial, I assume that's what you're saying to me when you entered the plea in the first instance.

Lewis responded, "Essentially, yes." The court then sentenced Lewis "as a second felony offender, second violent felony offender" to a determinate prison term of five years plus five years of post-release supervision.

By papers dated November 24, 2009, Lewis moved *pro se* pursuant to CPL § 440.10 to vacate the judgment on the ground that his guilty plea was involuntarily entered because he received ineffective assistance of counsel. He claimed that his counsel was ineffective because he: 1) misled Lewis to believe that he had filed pre-trial motions when he had not; 2) advised

5

Lewis to waive his right to challenge the prosecution's evidence through motion practice; 3) advised Lewis to accept the plea offer even though there was insufficient evidence to establish the serious physical injury element of the assault on a peace officer charge; and 4) coerced Lewis to plead guilty to avoid facing additional prison time if he was convicted after trial.

On January 7, 2010, the county court denied Lewis's motion on the ground that, under CPL § 440.10(2)(b), a CPL § 440.10 motion must be denied when the underlying judgment is appealable or pending on appeal. The court additionally found that "no facts have been put forth that the issues raised by the motion were not raised in the appeal that is pending." Lewis sought leave to appeal the denial of his motion to the Appellate Division and to consolidate the matter with his direct appeal. The Appellate Division denied Lewis's leave application on February 26, 2010.

Through counsel, Lewis appealed his conviction, arguing that: 1) his trial counsel was ineffective because he failed to file an omnibus motion in spite of Lewis's request, failed to ensure that Lewis could review grand jury minutes and other discovery material, and failed to obtain Taylor's medical records showing his alleged injuries; and 2) Lewis's waiver of his right to appeal did not encompass his ineffective assistance of counsel claim. Lewis filed a *pro se* supplemental appellate brief, again claiming that he was denied effective assistance of counsel and that he seemed to be proceeding *pro se* even though he had not been advised of the risks of proceeding *pro se*.

On May 20, 2010, The Appellate Division affirmed the judgment of conviction in its entirety in a reasoned opinion. *People v. Lewis*, 899 N.Y.S.2d 923 (N.Y. App. Div. 2010). The appellate court held that, "[t]o the extent that [Lewis's ineffective assistance of counsel claim]

impacts the voluntariness of [his] plea, it survives the waiver of his right to appeal." *Id.* It nevertheless concluded that the ineffective assistance of counsel claim was "unpreserved for review inasmuch as [Lewis] did not move to withdraw the plea or vacate the judgment of conviction." *Id.* The court further concluded that "any challenge involving matters outside the record are more properly the subject of a CPL article 440 motion." *Id.*

By *pro se* letter dated May 27, 2010, Lewis sought leave to appeal to the Court of Appeals, arguing that, because he had previously filed a § 440.10 motion to vacate the judgment, the Appellate Division improperly held that he had not preserved his appellate claim. Lewis's appellate counsel also filed a letter with the Court of Appeals seeking leave to appeal to that court on the grounds raised before the Appellate Division.

By *pro se* papers dated October 5, 2010, Lewis moved to reargue his direct appeal in the Appellate Division on the ground that the court overlooked the fact that he had filed a motion to vacate the judgment that was denied by the trial court and from which the Appellate Division had denied leave to appeal. On January 6, 2011, the Appellate Division granted Lewis's motion for reargument, vacated the May 20, 2010, order, and again affirmed the judgment of conviction. *People v Lewis*, 918 N.Y.S.2d 597 (N.Y. App. Div. 2011). The Appellate Division found that, although Lewis was "initially hesitant" to enter the plea due to his counsel's failure to make certain pretrial motions or obtain evidence of the victim's injuries, the prosecution subsequently provided Lewis and his attorney with a copy of Taylor's medical records. *Id.* The appellate court acknowledged that, after Lewis and his attorney had an opportunity to examine the records, Lewis entered his plea. *Id.* The court found that Lewis "acknowledged that he was entering the plea voluntarily, and that he understood the rights he was relinquishing and that he had assaulted

7

the victim." *Id.* The court concluded that, given those facts and "the fact that counsel did make appropriate discovery demands and negotiated a favorable plea," the court was "satisfied that [Lewis] was afforded meaningful representation." *Id.*

Lewis's appellate attorney sought leave to appeal to the Court of Appeals, raising the same ineffective assistance of counsel claims raised in the main appellate brief. Lewis also filed a *pro se* letter asking the court to review "the material contained in his post conviction motion." The Court of Appeals denied the leave applications on May 17, 2011.

Lewis timely filed a Petition for a Writ of Habeas Corpus to this Court on June 6, 2011.

## II. GROUNDS RAISED

In his *pro se* Petition, Lewis raises three grounds for habeas relief. First, Lewis argues that his plea was unknowing because his counsel misrepresented the sentence exposure and coerced him to accept the plea. Lewis likewise contends that his counsel "failed to file any pre-trial motion[s] after repeated requests." Third, Lewis asserts that the court failed to investigate his claims of conflict with his attorney. Finally, Lewis claims that the court failed to make clear whether he was adjudicated as a second felony offender or a second violent felony offender.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

8

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  Exhaustion

Respondent correctly contends that Lewis has failed to exhaust his claim that the trial court failed to clarify whether he was adjudicated a second violent felony offender or a non-violent second felony offender. This Court may not consider claims that have not been fairly

9

presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Because Lewis did not raise this claim before the state courts and instead raises it for the first time in this Petition, this claim is unexhausted.

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986), *superceded by statute on other grounds*, *United States v. Gonzalez-Largo*, No. 2:07-cr-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Lewis does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Lewis may not now return to state court to exhaust the claim, it may be deemed exhausted but

procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

This Court nonetheless may deny his claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds and will instead reach the merits of the claim as discussed below.

B.   Merits

<u>Claim 1. Involuntary Plea</u>

Lewis first argues that counsel "misrepresented the sentence exposure and coerced [him] to accept [the] plea." He further alleges:

> In trial counsel's letters to [Lewis], he coerced [Lewis] to accept [the] plea by repeatedly advising him to do so or be found guilty of two (2) higher degrees of felonies which carry a penalty of 7-15 [years'] imprisonment. There was insufficient evidence to support the higher degree of felony. This was not challenged by counsel. Also, counsel informed [Lewis] that he would be at the mercy of the judge if he went to trial.

The record indicates that defense counsel accurately explained Lewis's sentencing exposure to him. Because Lewis was charged with two violent class C felonies and was a second violent felony offender, he faced a minimum determinate prison sentence of 7 years and a maximum determinate prison sentence of 15 years. *See* N.Y. PENAL LAW § 70.04(3)(b). At the plea proceedings, the prosecutor stated that, if Lewis rejected the plea offer and was convicted of both counts after trial, the prosecution would seek the maximum prison sentence, with both counts to run consecutively, for an aggregate prison sentence of 22 years. Although defense

11

counsel's recitation of Lewis's maximum sentence exposure may have had a "discouraging effect on . . . [his] assertion of his trial rights," these circumstances are "an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973) (internal quotation marks omitted)). Accordingly, the state court's decision on the merits of Lewis's involuntary plea claim based on alleged sentencing threats neither contravened nor unreasonably applied clearly established Supreme Court precedent.

To the extent that Lewis complains that his plea was involuntary because his counsel did not obtain discovery that would enable Lewis to challenge the prosecution's evidence, the record demonstrates otherwise. As the appellate court found, the record shows that "counsel did make appropriate discovery demands" by seeking from the prosecution all discovery to which the defense was entitled. *Lewis*, 918 N.Y.S.2d at 598.

Moreover, Lewis's assertion that counsel coerced him into accepting the plea is belied by the record. Prior to accepting Lewis's plea, the court stated, "Do you understand that nobody can force you or threaten you into entering a plea? You must do so voluntarily." When asked whether "anybody promised [him] anything or threatened [him] to enter a plea," Lewis answered in the negative. A criminal defendant's self-inculpatory statements made under oath at his plea allocution "carry a strong presumption of verity," *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)), and "are generally treated as conclusive in the face of the defendant's later attempt to contradict them," *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). An independent review of the record therefore fully comports with the state court's decision on direct appeal rejecting Lewis's contention that his

plea was involuntary, and Lewis's claim that his plea was involuntary also fails on habeas review.

### Claim 2. Ineffective Assistance of Counsel

Lewis similarly asserts that his trial counsel was ineffective because he "failed to file any pre-trial motion[s] after repeated requests" from Lewis. According to Lewis, "[c]ounsel failed to challenge the indictment and the evidence to support the charges contained in the superseding indictment. [Lewis] made numerous requests on the record."

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Lewis must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

13

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Lewis's claim must fail, however, even under the more lenient New York standard. First, Lewis cannot show that he was prejudiced by counsel's alleged failure to challenge the indictment because the record indicates that the court determined that the prosecution met its burden of proof before the grand jury and thus that the indictment was properly issued. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim).

Furthermore, by pleading guilty, Lewis waived any argument that counsel was ineffective for failing to challenge the indictment. "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). This bar applies as well to "ineffective assistance claims relating to events prior to the guilty plea." *Coffin*, 76 F.3d at 498; *People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

15

By voluntarily pleading guilty, Lewis forfeited his right to bring claims premised on actions his counsel should have taken prior to the plea process.[4] Indeed, prior to pleading guilty, Lewis confirmed that he understood that he was waiving his right to make motions directed at evidence that the prosecutor intended to use against him at trial. Accordingly, Lewis's guilty plea, which the Court concludes was knowingly and voluntarily made, forecloses the remaining ineffective assistance claims in his Petition.

Claim 3. Attorney Conflict

Lewis additionally claims that the trial court failed to investigate his claims of conflict with his attorney.

A criminal defendant does not enjoy an unfettered right to counsel of his choice. *United States v. Brumer*, 528 F.3d 157, 160 (2d Cir. 2008). However, "[i]t is settled that where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001) (quoting *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981)). "When, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. *If the reasons are made known to the court, the court may rule without more.*" *Id.* (citation and brackets omitted).

Prior to entering his plea, Lewis informed the court, "Well, Judge, at this point, my attorney and I are in disagreement. There was a matter of motions to be filed." The court, having heard the basis of the alleged conflict, declined to inquire about the matter further

---

[4] The Court further notes that, for the reasons discussed *supra*, Lewis fails to make any plausible argument that his guilty plea was not voluntary and intelligent that would allow him to now argue that this argument should not be waived.

16

because it wished to first address whether Lewis wished to avail himself of the plea offer. Although a defendant's Sixth Amendment right to counsel extends to plea negotiations, *see Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" (citations omitted)), the record does not indicate that any conflict with his attorney was so severe as to have deprived him of competent counsel. Continued representation may violate the Sixth Amendment when the dispute leads to a complete breakdown in communication between the defendant and his attorney. *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997). While Lewis expressed dissatisfaction with his counsel, at no point did he provide evidence of legitimate reasons for the substitution of counsel, such as a conflict of interest or a complete breakdown of communication. Although Lewis did have a right to proceed without incompetent counsel, there is simply no evidence to suggest that his trial counsel was incompetent.

Moreover, there is no evidence to suggest that the trial court unreasonably ignored Lewis's concerns about his representation. Indeed, the record indicates that the counsel that Lewis now complains about was appointed to represent him only after Lewis made similar complaints about his previous counsel and she asked to be removed from his case. After the court substituted Lewis's counsel, it made the following admonishment:

> Now, Mr. Lewis, let me offer you a bit of advice. You don't have to take it if you don't want to. Very rarely do I re-assign attorneys, basically, because the attorney is trained in the practice of law and you're not. And so I usually give great deference to an attorney's position with regard to whatever the representation is, because they are familiar with what there is and what there isn't and what they can do and what they can't do. They can't make up things out of whole cloth. They can't create things that aren't there.
> And so it's always extremely difficult, and I find it difficult to relieve an attorney and assign a new one simply because this isn't a game we're playing. It's an attempt to

17

> allow the wheel of justice to turn in a way that allows everybody to have the same playing field as on both sides, whether it's the People or whether it's the defendant.
> So I'm going to advise you that the attorney I'm assigning to you needs to be informed of what it is that you're trying to say or do. But decisions made with regard to what's filed and what isn't filed are going to be his. That's what his job is. And until you have a law degree and are licensed to practice law in the State of New York, he's going to be the spokesman for you okay?

Lewis therefore cannot prevail on his claim that the trial court failed to investigate the conflict he had with counsel.

Claim 4. Adjudication of Prior Felony Status

Finally, Lewis argues that "the issue of whether [Lewis] was adjudicated as a second felony offender or second violent felony offender was not clear."

As an initial matter, Lewis's claim is not cognizable on federal habeas review because it does not have federal constitutional implications. Lewis does not contend that his sentence is illegal under either state or federal law, and he does not point to any United States Supreme Court authority establishing a federal right to clarification of a sentencing adjudication. Moreover, the record establishes that Lewis was adjudicated as a second violent felony offender. The predicate offenses used for his adjudication was his 2005 conviction for the crimes of attempted first-degree rape and first-degree sexual abuse—both of which are violent felony offenses. *See* N.Y. PENAL LAW § 70.02(1)(a),(c). Because sentencing in the instant case involved another violent felony offense, *see id.* § 70.02(1)(c), his adjudication as a second violent felony offender was mandated under New York law, *id.* § 70.02(1),(2). The record suggests that defense counsel acknowledged that fact when, during the sentencing proceedings, he abandoned his efforts to seek Lewis's adjudication as a non-violent second felony offender. Although the trial judge initially misspoke when pronouncing Lewis's sentencing adjudication,

18

he corrected himself and stated that Lewis was to be sentenced as a second violent felony offender. Lewis is therefore not entitled to relief on this ground.

V. CONCLUSION

Lewis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: June 19, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge